UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>   )<br>    Plaintiff,  )<br>   )<br>v.  )<br>   )<br>ANWAR MITHAVAYANI, and  )<br>PETE ANTHONY TYNDALE,  )<br>   )<br>    Defendants.  ) | No. 6:17-CV-25-REW-HAI<br><br>OPINION & ORDER |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Anwar Mithavayani moves for a trial separate from his Co-Defendants. *See* DE 197 (Motion to Sever). Defendant Pete Tyndale joins the request. *See* DE 206 (Motion to Join), DE 208 (Order granting).[1] The Government responded. DE 210. Mithavayani replied. DE 215. As fully explained below, both requests are, under Rule 12, untimely and, under the applicable Rule 8[2] and 14 analyses, unwarranted. Accordingly, for the reasons more fully explained below, the Court **DENIES** DE 197 and DE 206.

*The Charges*[3]

Generally, the Indictment alleges that Physician (Moore and Gowder) and Non-Physician Defendants (Mithavayani and Tyndale, among others) conspired to operate a "pill mill," illicitly distributing pain medication to individuals in this District, and to

---

[1] The Court has fully reviewed Tyndale's filing and finds no material variation from Mithavayani's argumentation. The Court's analysis, at times and for brevity's sake, mentions only Mithavayani's theories. However, such discussion applies with equal force to Tyndale's paired severance pursuit.

[2] Mithavayani truly raised this only in reply, which is improper. *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court[.]"). The Court addresses Rule 8 only for completeness.

[3] As reflected in the operative Superseding Indictment ("Indictment" herein). DE 46.

1

launder the proceeds. Specifically, all Defendants face charges of conspiring to distribute and dispense oxycodone and oxymorphone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) & 846 (Count 1). The Indictment links four Defendants' (Gowder, Moore, Mithavayani, and Tyndale)[4] conspiracy conduct to one or more resulting fatalities. Gowder, Moore, Mithavayani, and Tyndale also confront charges of knowingly conspiring to conduct financial transactions involving proceeds of controlled substance distribution with the intent to promote such controlled substance distribution, in violation of 18 U.S.C. § 1956(h).[5] Gowder (Counts 8-10), Moore (Counts 9 & 10), Mithavayani (Counts 14, 23 & 26), and Tyndale (Count 23) face individual, 18 U.S.C. § 1956(a)(1), money laundering allegations. Finally, the Indictment charges Gowder (Counts 11, 12), Mithavayani (Counts 13, 19-22, 24, 25), and Tyndale (Counts 15-20, 22, 24) with multiple counts of knowingly conducting financial transactions involving trafficking proceeds of $10,000 or more, in violation of 18 U.S.C. §§ 2 & 1957. All conduct allegedly occurred in Bell, Knox, Laurel, McCreary, and/or Whitley County. The conspiracy conduct allegedly occurred from on or about January 2009, to August 2017.[6]

*Timeliness*

Both Mithavayani's and Tyndale's severance requests are untimely under the applicable defensive motion deadlines. DE 107 (Mithavayani Scheduling Order); DE 101

---

[4] The Indictment also names Defendants Larry Karr and James Bradley Combs in the Count 1 conspiracy but excludes both from the "death resulted" aggravator. Combs (Count 4) and Karr (Counts 2 & 3) also face distinct oxycodone distribution counts. Karr pleaded guilty to Count 1, DE 156 (Order accepting guilty plea), and Combs awaits trial.
[5] Mithavayani and Tyndale face an additional money laundering conspiracy charge (Count 6). DE 46 at 4.
[6] The stated range is based on the Count 1 trafficking conspiracy charge. However, the 1956(h) conduct allegations fall within this range—specifically, beginning in August 2011, for both Counts, and continuing through May 11, 2016, and July 1, 2016, for Counts 6 and 5 respectively.

(Tyndale Scheduling Order). The Court does not find, on this record, good cause to warrant late consideration.

Rule 12 governs. It requires pretrial filing of motions to sever (or challenging joinder) per any schedule the Court imposes. Fed. R. Crim. P. 12(b)(3)(B)(iv) & (b)(3)(D). The Rule allows the Court to set a defensive motions deadline, *id.* at (c)(1), and to extend or reset same. *Id.* at (c)(2). The deadline operation (including the avenue for relief) is clear:

> If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.

*Id.* This sub-rule, placed in (c)(3) at the 2014 revision, borrows most of the language and all of the standard of its predecessor in Rule 12(e). Per the Advisory Committee Notes, "New paragraph 12(c)(3) retains the existing standard for untimely claims. The party seeking relief must show 'good cause' for failure to raise a claim by the deadline, a flexible standard that requires consideration of all interests in the particular case." Rule 12(e) (qua (f) until 2002 amendments) created a deep well of authority on the question. The Sixth Circuit agrees that "[g]ood cause is a flexible standard heavily dependent on the facts . . . as found and weighed by the district court in its equitable discretion. At a minimum, it requires of the party seeking a waiver to articulate some legitimate explanation for the failure to timely file." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010). Most courts, pinning the analysis on Supreme Court treatment of pre-trial motion timeliness, have required a showing of both cause and prejudice. As stated in *United States v. Gonzalez*:

> In *Davis v. United States* and *Shotwell Manufacturing Co. v. United States*, the Supreme Court explained that, to demonstrate good cause under

3

> rule 12, the moving party must show both (i) the cause for its failure to raise the claim, objection, or defense on time; and (ii) the prejudice that it would suffer from not being able to raise the claim, objection, or defense. *See Davis v. United States*, 411 U.S. at 243, 93 S. Ct. 1577 [1973] (upholding the district court's decision to deny relief from a rule 12 waiver where the defendant failed to establish good cause to excuse his untimely motion and the prejudice that would result from not litigating his motion); *Shotwell Mfg. Co. v. United States*, 371 U.S. at 362–63, 83 S. Ct. 448 [1963] (holding that, because the defendants did not explain why they failed to raise their objections on time, and because the defendants did not point to any prejudice from not litigating their objections, the trial court properly held that their objections were waived under rule 12).

81 F. Supp. 3d 1212, 1223 (D.N.M. 2015); *see also United States v. Simpson*, No. 14-cr-00265-PAB, 2015 WL 13203372, at *1 (D. Colo. Aug. 20, 2015) ("The Supreme Court has suggested that relevant considerations include a defendant's explanation for his failure to timely raise a claim, objection, or defense and the prejudice he would suffer if unable to raise the claim, objection, or defense." (citing *Davis* and *Shotwell*)).

Defendants missed their defensive motions deadlines by over five months. Mithavayani was clearly aware of this date. He mentioned it in his first motion to continue. *See* DE 118. Tyndale's defensive motion deadline expired even before Mithavayani's. DE 101 (Scheduling Order). However, unlike Co-Defendant Gowder, the moving Defendants never requested a deadline extension. *See* DE 120 (Gowder motion to extend); DE 129 (Order Granting DE 120 and stating: "Nothing in this Order affects any other deadline or any other defendant."). Neither Defendant attempts to justify the tardy filings; and the Court, on this spare record, finds no good cause to excuse the delay.

Further, as explained below, the severance requests are meritless. This finding serves as an alternative denial basis and bolsters the tardiness rejection. That is, the Court's severance rejection, on Rule 12 grounds, does not prejudice Defendants because their requests also fail under Rule 14.

4

*Joinder*

The Court finds that the Indictment properly joined all Defendants. An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The foundational Rule 8 question is whether "each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions." *United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982). The Court concludes that each, in the circumstances, does.

A group of acts or transactions constitutes a series "if they are logically interrelated," such as where they "are part of a common scheme or plan." *United States v. Lewis*, 363 F. App'x 382, 390 (6th Cir. 2010). The Court looks "to the allegations in the indictment to determine whether joinder was proper." *United States v. Teadt*, 653 F. App'x 421, 425 (6th Cir. 2016) (affirming joinder of "logically interrelated transactions"); *see also Lewis*, 363 F. App'x at 390-91 (noting instances where the Sixth Circuit has "also considered the government's proofs when assessing the propriety of joinder"). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 113 S. Ct. 933, 937 (1993). Accordingly, Rule 8(b) is "construed in favor of joinder." *Hatcher*, 680 F.2d at 440.

The Indictment charges Tyndale, Mithavayani, and their Co-Defendants with conspiring to traffic narcotics and launder proceeds. "Rule 8 requires only that the government allege, not prove, the facts necessary to sustain joinder." *Cf. United States v. Dominguez*, 226 F.3d 1235, 1241 n.8 (11th Cir. 2000) (internal citations omitted). Here, there is a sufficient connection between the counts to permit joinder. "[T]he 'predominant

consideration' of a decision regarding joinder under Rule 8(b) is 'whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once.'" *United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997). Joinder here effectuates this principal concern, ensuring that the critical dispensing events "need only be proved once." *Id.*

Mithavayani claims that "whether the doctors [Moore & Gowder] were meeting the required standard of care is irrelevant to the proof against Mithavayani[.]" DE 197 at 3. Mithavayani's position is logically untenable. The doctors' alleged illicit dispensation of narcotics is the crux of the charged § 846 conspiracy. The Government seeks to prove Mithavayani and Tyndale conspired with the Co-Defendant doctors to illicitly distribute or dispense controlled substances. Evidence regarding the legality of the Co-Defendant doctors' prescribing practices is pellucidly relevant. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). The physician role is logically probative of—indeed a key part of—the alleged conspiracy. Simply put: "Persons jointly indicted on similar evidence from the same or related events generally should be tried together." *United States v. Lara*, 891 F.2d 669, 671 (8th Cir. 1989). That is the Co-Defendants' situation, and so the Court views joinder as proper here.

*Severance*

Defendant principally invokes Rule 14 as grounds for the severance request. The Rule provides: If joinder "appears to prejudice" a defendant, the Court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that

justice requires." Fed. R. Crim. P. 14(a). Rule 14 recognizes, "that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." *Zafiro*, 113 S. Ct. at 937. However, if joinder is Rule 8(b) compliant, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 938. A defendant pursuing severance must show "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (internal quotation marks and citation omitted) (noting the "high standard required to prevail on a severance motion"); *see also United States v. Gjokaj*, 555 F. App'x 581, 587 (6th Cir. 2014) (affirming severance denial when defendant presented only "speculation" of prejudice).[7]

Tellingly, Mithavayani's first[8] severance argument relies on "the last harbor available: Evidence Rule 403." *Griffin v. Condon*, No. 17-1931, 2018 WL 3769187, at *4 (6th Cir. Aug. 8, 2018). He contends that proof regarding Moore's and Gowder's prescribing practices is, at most, minimally relevant and that any probative value is

---

[7] "Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 113 S. Ct. at 938. "[L]ess drastic measures" than severance, "such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

[8] Defendant's unsupported conclusory claim that "prevailing case law favors severing defendants in Mithavayani's position as a non-doctor from doctors" is not, in any material sense, an "argument." *See* Cicero, *De Inventione; De Optimo Genere Oratorum; Topica* 387 (H.M. Hubbell trans. 1949) (repr. 2006) ("[W]e may define . . . an argument as a course of reasoning which firmly establishes a matter about which there is some doubt."). In any event, Sixth Circuit precedent contradicts Mithavayani's categorical and citation-free assertion. *See, e.g.*, *United States v. Elliott*, 876 F.3d 855, 857 (6th Cir. 2017*), cert. denied sub nom. Frial-Carrasco v. United States*, 138 S. Ct. 1314 (2018) (affirming pill mill convictions for jointly tried security guard, physician, and physician assistant).

outweighed by possible jury-confusion-based prejudice. As the Court previously explained, proof regarding prescribing practice legality is not just relevant, but critical to and inherent in this conspiracy charge.

Moreover, Mithavayani's theory that jurors might mistakenly believe he was required to comply with standards applicable to physicians is unpersuasive. Mithavayani, of course, is not a doctor and, thus, could not "prescribe" *any* controlled substances—facts of which the jury will be aware and which counsel may highlight. Defendant does not convince the Court that a properly instructed juror might erroneously hold him to the standard for *prescribing* medications "outside the scope of professional practice and not for a legitimate medical purpose." DE 197 at 5. In short, Defendant does not credibly develop any nexus between the proof regarding his Co-Defendant's conduct and *actual* or *specific* prejudice. *Cf. King v. United States*, 355 F.2d 700, 704 (1st Cir. 1966) ("It may be [ ] prejudicial to try [ ] defendants together . . . [,] by being joined with another allegedly 'bad man' . . . [but] the proof, even if the defendant were tried alone, might properly show his association with the other individuals."); *United States v. Davis*, 177 F.3d 552 (6th Cir. 1999) (Upholding district court's denial of defendant's severance motion although defendant was (A) charged only with possession and (B) "tried with individuals charged with more serious offenses[,]" including a conspiracy.). Further, the Supreme Court and Sixth Circuit envision the proper prophylactic for any speculative danger to be carefully crafted jury instructions.

Mithavayani also contends that the Court should sever his trial to avoid any interference with his Co-Defendants' speedy trial rights. *See* DE 197 at 7. This argument falls well short of meeting Mithavayani's burden to show, as to himself, "compelling,

8

specific, and actual prejudice from [the] court's refusal to grant the motion to sever." *Driver*, 535 F.3d at 427. Defendant ties the alleged prejudice to "his request for a continuance[,]" not to severance denial. DE 197 at 7. "The severance of a trial of two defendants who were jointly indicted is an extraordinary remedy[.]" *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005). Speculative trial delay—dependent upon the Court granting a continuance—to Mithavayani's Co-Defendants simply is not, within the Rule 14(a) rubric, "substantial, undue, or compelling prejudice." *Davis*, 177 F.3d at 558.

Finally, Mithavayani alleges that severance is necessary to avoid a potential violation of *Bruton v. United States*, 88 S. Ct. 1620 (1968). *Bruton* and its progeny provide the contours for Sixth Amendment Confrontation Clause analysis as to a defendant's out-of-court statement implicating a co-defendant. Under *Bruton*, a non-testifying defendant's statement cannot be admitted at a joint trial if it "expressly implicat[es]" a co-defendant. *Richardson v. Marsh*, 107 S. Ct. 1702, 1707 (1987) (quoting *Bruton*, 88 S. Ct. at 1621 n.1). Statements directly implicating a co-defendant remain inadmissible even if redacted. *See Gray v. Maryland*, 118 S. Ct. 1151, 1156 (1998). However, a redacted statement that is "not incriminating on its face, and bec[omes] so only when linked with evidence introduced later at trial" is, if accompanied by appropriate limiting instructions, admissible at a joint trial. *See Richardson*, 107 S. Ct. at 1707, 1709.

Mithavayani contends that the Government's potential use, at trial, of statements Defendants Gowder and Moore made in Tennessee Board of Medical Examiners proceedings would violate *Bruton*. Thus, per Defendant, the Court should sever to avoid a prejudicial Confrontation Clause violation. Notably, Mithavayani does not allege that the

9

Gowder or Moore statements (specifically or generally) implicate him in any way. [Indeed, Defendant explicitly claims that the Board proceeding "did not pertain to or implicate Mithavayani[.]" DE 197 at 2.] Rather, Defendant contends that the Moore & Gowder statements "directly and indirectly *impact the defense* of Defendant Mithvayani (sic) and mandate that a severance be granted" on *Bruton* grounds. *Id.* at 5 (emphasis added). *Bruton*, of course, does not bar admission of a defendant's out-of-court statements that merely "impact" a co-defendant's case.

Defendant, without explanation, implicitly proposes an expansion of the *Bruton* rule that would, effectively, bar joint trials if any charged defendant confessed. Indeed, Mithavayani's self-serving interpretation would extend *Bruton*'s reach to statements the Supreme Court has explicitly excluded from the case's purview. *See Richardson*, 107 S. Ct. at 1709 ("While we continue to apply Bruton where we have found that its rationale validly applies, *see Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162, we decline to extend it further."). In short, Mithavayani's *Bruton* theory is facially inconsistent with the rule and does not justify severance. Given the clear insufficiency of the theory and Defendant's failure to identify **any** statement implicating Mithavayani (or Tyndale), the Court could stop here and deny the motions.[9]

---

[9] The United States argues that the Gowder and Moore materials are non-testimonial and thus outside the concerns of the Confrontation Clause. *See* DE 210 at 6. The argument rests on the understanding that the constitutional worry, and thus *Bruton* inquiry, hinges on whether hearsay is testimonial or non-testimonial. *See United States v. Parlier*, 570 F. App'x 509, 517 (6th Cir. 2014) ("[H]earsay evidence that is non-testimonial is not subject to Confrontation Clause analysis[.]"); *United States v. Collins*, 799 F.3d 554, 585 (6th Cir. 2015) ("For a statement to be considered 'testimonial' under the Confrontation Clause, the declarant must have 'intended to bear testimony against the accused.' This determination 'depends on whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting

10

Nonetheless, the Court has fully reviewed the Gowder & Moore Orders Mithavayani attached. *See* DE 197-1 (Gowder Agreed Order); DE 197-2 (Moore Consent Order). Both statements directly implicate only the identified physician. Defendant does not attach the "depositions" containing allegedly prejudicial statements. However, the Court has conducted a term search of the voluminous, Government-supplied Moore and Gowder transcripts. DE 210-1 (Moore); DE 211-1 to -3 (Gowder). Moore mentions Mithavayani, by first name, on a single page, DE 210-1 at 10; Moore simply identifies "Anwar" as the owner of TPI, a fact that Mithavayani, effectively, concedes. DE 197 at 2. The transcripts do not otherwise include the terms Anwar, Mithavayani, Pete, or Tyndale. [The single direct reference could, if appropriate, be redacted.] Ultimately, no statement

---

the crime.'" (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004); *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009)).

The line can be difficult to draw, but not so here. The papers at issue are formal court documents generated during administrative discipline litigation over the physicians' licenses in Tennessee. The administrative trial record, related deposition proof, and formal adjudicative documents surely bear the level of formality and contextual gravity of testimony; much of it is actual testimony. *See White v. Illinois*, 112 S. Ct. 736, 747 (1992) (Thomas, J., concurring in part and concurring in judgment) ("[T]he Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."); *accord Crawford v. Washington*, 124 S. Ct. 1354, 1364 (2004). Although the Government suggests analysis focused only on the declarant's intent to implicate a third-person, that reads the cases too narrowly and collapses the *Bruton* assessment into the testimonial/non-testimonial dichotomy. *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2532 (2009) (Testimonial statements are those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" (quoting *Crawford*, 124 S. Ct. at 1364). It would be hard to call express, sworn testimony or formal stipulations before an administrative body—particularly one addressing failure to follow the law, with obvious possible criminal implications from the conduct at issue—as non-testimonial for Sixth Amendment purposes. *Cromer*, 389 F.3d at 675 ("A statement made knowingly to the authorities that describes criminal activity is almost always testimonial." (internal citation and quotation marks omitted)). The Court treats the materials as testimonial for purposes of *Bruton* analysis.

11

is "incriminating on its face," rather they could "bec[ome] so only when linked with evidence introduced later at trial[.]" *See Richardson*, 107 S. Ct. at 1707, 1709. Thus, none of the Board-related statements risks a *Bruton* violation.

Though Defendant phrases the argument as *Bruton*-based, Mithavayani's claim is, at bottom, a "spillover prejudice" theory. The Supreme Court has rejected the severance remedy for this sort of claim, noting that a "risk of transference of guilt" may be "reduced to the minimum by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently." *United States v. Lane*, 106 S. Ct. 725, 732 n.13 (1986) (internal quotation marks removed); *see also United States v. Chavis*, 296 F.3d 450, 461–62 (6th Cir. 2002) (relying on same for rejecting a "spillover prejudice" argument (internal quotation marks removed)). Indeed, the Court may "assume that the jury [will] follow[] the judge's instruction and" properly segregate the proof vis-à-vis each defendant in its decision-making calculus. *See Chavis*, 296 F.3d at 464; *Frost*, 125 F.3d at 391 ("The District Court further minimized any prejudice by instructing the jury to consider only the evidence against each defendant on each charge, and to return separate verdicts, without regard to the other charges or defendants.").

The Court rejects Defendants' severance arguments. In light of the Court's jury instruction options, Defendant entirely failed to identify any incurable "risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 113 S. Ct. at 933. The untimely claims warrant no Rule 14 relief.

For these reasons, the Court **DENIES** Defendants' severance requests (**DE 197 and 206**).

This the 15th day of October, 2018.



Signed By:
*Robert E. Wier*
United States District Judge

13