UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:17-CR-25-S-REW

UNITED STATES OF AMERICA                                              PLAINTIFF

V.        ANSWER IN OPPOSITION TO MITHAVAYANI'S
          MOTION TO VACATE CONVICTION

ANWAR MITHAVAYANI                                                     DEFENDANT

\* \* \* \* \*

Comes now the United States, by counsel, in opposition to the Defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  [R. 693.]  His motion and supporting memorandum do not show that he received ineffective assistance of counsel, and his procedurally defaulted claims of prosecutorial misconduct fare no better.  The motion should be denied on the briefs without an evidentiary hearing.

Following a twenty-day trial, a jury convicted the Defendant of a drug trafficking conspiracy and related money laundering charges, all revolving around his owning and operating a pill mill.  *United States v. Gowder*, 841 F. App'x 770, 775 (6th Cir. 2020).  He was sentenced to 300 months of imprisonment.  [R. 537: Judgment at PageID# 9181.]  The Defendant filed an appeal and retained new counsel (who had represented a co-defendant at trial and was thus readily familiar with the record) to prosecute that appeal.  He raised five issues on appeal in support of his request to have his conviction reversed:

(1) sufficiency of the evidence on the 21 U.S.C. § 846 count; (2) sufficiency of the evidence on the money laundering counts; (3) error in instructing the jury on deliberate ignorance; (4) plain error in the "good faith" jury instruction; and (5) error in admitting evidence that a prospective clinic employee was arrested before starting work at the clinic. Brief of Appellant at 6-8, *United States v. Mithavayani*, No. 19-5911, dkt. 31 (Jan. 31, 2020). He made no mention of any alleged prosecutorial misconduct. *Id.* The Sixth Circuit rejected all these arguments and affirmed the Defendant's conviction. *Gowder*, 841 F. App'x at 785. The Defendant filed this motion to vacate his conviction under 28 U.S.C. § 2255, alleging that the United States engaged in prosecutorial misconduct in violation of his Fifth and Sixth Amendment rights (Grounds One and Two, respectively) and that he received ineffective assistance of counsel under the Sixth Amendment (Ground Three). [R. 693: Mot. to Vacate at PageID# 12836-39.] The United States is not aware of the Defendant using any other federal remedies. *See* Rules Governing Section 2255 Proceedings 5(b).

## ARGUMENT

I. **The Defendant's Meritless Claims of Prosecutorial Misconduct Are Procedurally Barred.**

Grounds One and Two of the Defendant's motion allege prosecutorial misconduct in violation of his Fifth and Sixth Amendment rights, respectively. These claims are procedurally barred. "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152,

167-68 (1982)). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Here, the record is clear that the Defendant did not make any claim of prosecutorial misconduct on his direct appeal. Brief of Appellant, *United States v. Mithavayani*, No. 19-5911, dkt. 31 (Jan. 31, 2020) (no reference to prosecutorial misconduct). Thus, the Court can consider these claims in his § 2255 motion only if he establishes either (1) good cause and prejudice or (2) actual innocence. *Regalado*, 334 F.3d at 528. The Defendant has not even attempted to make either of these required showings. He offers no argument[1] for why he did not raise these claims in his direct appeal. [R. 706: Def. Mem. of Law at PageID# 12886 - 12900.][2] He likewise makes no claim of actual innocence. Indeed, one of his arguments is directly contrary to an actual-innocence claim: He contends that he suffered prejudice by his counsel's alleged failure

---

[1] The Defendant's motion states that Ground One was not raised in his direct appeal because of "[d]eficient performance of Appellate Counsel." His memorandum of law developed no argument whatsoever behind this contention regarding appellate counsel, and thus the argument is waived. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation."); *see also Benanti v. United States*, No. 3:15-CR-177-TAV-DCP-1, 2022 WL 68383, at *10 (E.D. Tenn. Jan. 6, 2022) (quoting *Thomas* in support of rejecting undeveloped arguments of ineffective assistance of counsel in a § 2255 motion).

[2] After the Court denied his third motion for an extension of time to file his memorandum of law [*see* R. 707: Order at PageID# 12942], the Defendant nonetheless attempted an end-run around this ruling by filing an "amended" memorandum, [*see* R. 715: Am. Mem. of Law]. Because the Court never granted leave for the Defendant to file another version of his memorandum, the United States refers only to the memorandum that was timely filed at docket entry 706.

to counsel him on his option to plead guilty. [*Id.* at PageID# 12915-16 ("[H]ad [Defendant] pleaded guilty he could likely have benefitted from a lesser sentencing exposure.").] Because these claims are not properly before the Court, no relief can be granted on Grounds One or Two. *See, e.g.*, *Benanti v. United States*, No. 3:15-CR-177-TAV-DCP-1, 2022 WL 68383, at *10 (E.D. Tenn. Jan. 6, 2022) (rejecting § 2255 petitioner's prosecutorial misconduct claims without discussion of the merits because they were procedurally defaulted by not being raised on direct appeal).

## II. The Defendant Cannot Establish That He Received Ineffective Assistance of Counsel.

Ground Three of the Defendant's motion alleges he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Unlike Grounds One and Two, this claim is not procedurally barred because such claims generally are not properly raised on direct appeal. *United States v. Reynolds*, 534 F. App'x 347, 372 (6th Cir. 2013). To prevail on an ineffective assistance of counsel claim, the Defendant bears the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Defendant must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel. If the Court determines that he has failed to satisfy one prong, it need not consider the other. *Id*. at 697. The Defendant bears the burden of proving his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

4

To show deficient performance, the Defendant "must prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 689). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

To prove prejudice, the Defendant "must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different.'" *Dado*, 759 F.3d at 563 (alteration in original) (quoting *Strickland*, 466 U.S. at 694); *see also Strickland*, 466 U.S. at 687 ("This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."). "When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case." *United States v. Munoz*, 605 F.3d 359, 377 (6th Cir. 2010) (alteration in original) (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006)). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Dado*, 759 F.3d at 563 (quoting *Strickland*, 466 U.S. at 694). Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691).

5

The Defendant's motion sets out various allegations of how the performance of trial counsel, John L. Caudill, purportedly fell below an objective standard of reasonableness. [R. 693: Mot. to Vacate at PageID# 12839, 12845). None of them can meet the high thresholds of *Strickland*'s performance and prejudice prongs. *See Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland*'s high bar is never an easy task."). Each allegation is addressed below.

### A. Failure to Call Witnesses or Cross-Examine on Particular Topics

The Defendant claims counsel's performance was constitutionally deficient because he failed to recall witness Jenna Crawley, failed to call Edward Hadley as a witness in support of an advice-of-counsel defense, failed to call Justin Wood, Brian Reeder, and John Blakely as witnesses, and failed to cross-examine Julie Hankins, Amanda Boyd, and Mary Katherine Bratton on specific topics. As a threshold matter, the Defendant fails to show how any of these alleged errors, even if deemed defective performance, could possibly overcome what the Court described as "the voluminous proof the jury ultimately relied on to convict." [R. 450: Op. and Order Denying Mithavayani and Tyndale Mot. for Acquittal at PageID# 7057; *see also id*. at PageID# 7051-53 ("the Government's case included copious proof that painted the Tennessee Pain Institute (TPI) as a sham clinic set up to divert oxycodone and oxymorphone to a patient population significantly populated by addicts and other traffickers" and detailing evidence that showed "proof as to an illicit distribution agreement was strong").] Thus, even if the Court accepted the Defendant's factual contentions as true, his claim would still fail under *Strickland*'s prejudice prong.

6

Turning first to the Defendant's allegations regarding Jenna Crawley, Julie Hankins, and Amanda Boyd, trial counsel John Caudill's decisions as to these witnesses were clearly the product of informed trial strategy.  Ex. A: Affidavit of John L. Caudill (hereinafter "Caudill Aff.") ¶ 4 ("I focused the cross-examinations on issues I believed to be most pertinent to creating reasonable doubt in the minds of the jurors as to Mithavayani's guilt on the drug conspiracy and money laundering charges.").  His cross-examination of Crawley elicited many favorable points in support of the defense theory, including:

- The Defendant was not involved in the Jacksonville pill mill operations or with Faye Imaging (Pete Tyndale's MRI business);
- Aspects of the illegal pill mill operations in Jacksonville that were not present at TPI;
- Crawley never told Mithavayani about her involvement in criminal activity regarding the Jacksonville operations or that she was under federal investigation;
- Crawley's involvement with Pete Tyndale and Tyndale's instruction for her to use the name "Sam" while accompanying him to the new pain clinic he was establishing in Tennessee, and her use of the name "Sam" an email account; and
- Crawley did not know of anything Mithavayani did that was illegal.

Caudill Aff. ¶4(a); *see also* R. 435:  Trial Tr. Day 4 (Jenna Crawley) at PageID 4784 – 4816 (Caudill cross-examination of Crawley).

The Defendant asserts that Caudill was defective because he did not recall Crawley as a witness for further impeachment.  But this argument ignores the fact that (1) Caudill had already impeached Crawley about the extent of her involvement with setting up TPI and her using the name "Sam," and (2) that Caudill had elicited favorable testimony from Crawley specific to the Defendant – *i.e.*, that the Jacksonville pill mills

7

operated differently than TPI and that she knew of nothing that the Defendant did that was illegal. Caudill made the sound strategic choice not to recall Crawley in the defense case because that "would have risked giving the United States an opportunity to rehabilitate the witness and undermine the effectiveness of the cross-examination." Caudill Aff. ¶ 4(a). Second-guessing this decision is not the proper function of a court assessing a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . [but a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Relatedly, the Defendant alleges defective performance by the failure to cross-examine TPI employees Julie Hankins and Amanda Boyd about Crawley's use of the name "Samantha Manning." Again, Caudill's cross-examination demonstrated that he was well-prepared for questioning those witnesses and he had a sound basis for choosing which topics to cover. Rather than use more time and jury attention on a tangential point (an especially salient consideration in a lengthy multi-defendant trial), Caudill focused on topics like TPI discharging hundreds of patients making referrals to law enforcement, the Defendant not being involved in medical decisions, the Defendant wanting things done correctly and professionally at TPI, the Defendant providing TPI staff with updates about laws governing pain clinics and visiting TPI to ensure compliance, TPI using a screening process for admitting patients, and TPI staff being diligent about ensuring the wrong

8

people did not become TPI patients. Caudill Aff. 4(b)-(c); R. 440: Trial Tr. Day 7 (Amanda Boyd and Julie Hankins) at PageID# 5610 – 26 (Caudill cross-examination of Boyd) and 5737 – 71 (Caudill cross-examination of Hankins). He even had a recording of a call introduced into evidence in which Boyd went through many screening questions with a prospective patient, further supporting the defense theory. A reasonable attorney surely could decide that the better strategy was to focus the cross-examination on these issues rather than further impeachment of Crawley on an issue not central to any charge. Even if another attorney may have decided differently, that is no basis for finding that Caudill completely failed to act as the attorney the Sixth Amendment requires. *Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

The Defendant also takes issue with Caudill's cross-examination of Mary Katherine Bratton of the Tennessee Department of Health, Office of General Counsel. He claims that Caudill was defective as counsel because he did not ask her about co-defendants Gowder and Moore previously testifying that they developed the "patient policies for the TPI clinic." [R. 693: Mot. to Vacate at PageID# 12845.] Once again, this was plainly a strategic choice. First, such testimony would garner a hearsay objection. Second, this fact – that the doctors, not the Defendant, were responsible for the medical policies and decisions – was covered by other witnesses (*i.e.*, Boyd and Hankins) based on their firsthand observations. [R. 440: Trial Tr. Day 7 (Amanda Boyd and Julie Hankins) at PageID# 5612, 5752.] As such, Caudill focused his cross-

9

examination – which followed lengthy cross-examination by two other attorneys – on developing new points helpful to the defense theory. Caudill Aff. ¶ 4(d). The Defendant points to no facts that would show that this choice was deficient performance or that the trial result would have been different had Caudill elicited this redundant hearsay testimony.

Next, the Defendant claims that Caudill's performance was defective because he did not present an "advice of counsel" defense and failed to call Edward Hadley, an attorney retained by the Defendant and co-defendant Pete Tyndale to advise them on their operation of TPI, in support of that defense. "An advice of counsel instruction requires a showing of '(1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice.'" *United States v. Bruner*, No. 5:14-CR-5-KKC, 2014 WL 2921840, at *1 (E.D. Ky. June 27, 2014) (quoting *United States v. Lindo*, 18 F.3d, 353, 356 (6th Cir. 1994)). "[T]he advice and good faith reliance must relate to the wrongful acts at issue in the case." *Id.* at *2.

Given these requirements, Caudill recognized that this defense would require testimony from the Defendant or Hadley, and perhaps from both individuals. Caudill Aff. ¶ 5. Both witnesses carried significant risks, and the Defendant himself had to make the ultimate decision on whether he would testify. *Id.* Caudill had "significant concern that Hadley would invoke his Fifth Amendment rights if questioned at trial, and this would have created very damaging jury optics," and feared "that calling Hadley would allow the United States to cross-examine him on myriad unfavorable aspects of TPI's practices that likely were not disclosed to Hadley." *Id.* This choice was plainly the

10

product of trial counsel weighing the pros and cons of a potential strategy and making an informed choice.

The Defendant also argues that Caudill's representation was deficient because he did not call two law enforcement witnesses, DEA Diversion Investigator Justin Wood and Kentucky State Police Detective Brian Reeder.  Although unclear from his pleadings, the Defendant appears to claim that Wood would have given testimony related to Hadley and the advice of counsel defense.  As noted above, Caudill made a strategic choice regarding that defense.  The hypothetical favorable testimony from Det. Reeder would be based on his supposed prior testimony that he "had picked" files (*i.e.*, TPI patient files) for the government's retained medical expert, Dr. Martin Eason.  [R. 706: Mem. of Law at PageID# 12906.]  First, the Defendant blatantly misstates Det. Reeder's testimony, which was that the United States had submitted both hand-selected patient files *and* randomly selected Kentucky patient files from TPI to Dr. Eason for his review, and that Dr. Eason concluded that all the files evidenced illegitimate prescribing.  [R. 134: Tr. of Mithavayani Det. Hr'g at PageID# 721-22.]  To call this "admit[ing] direct knowledge of the United States manipulation of key evidence in the form of patient records" is grossly misleading.  [R. 706: Mem. of Law at PageID# 12907.]  Second, the fact that Dr. Eason reviewed both randomly selected and hand-selected patient files was no secret at trial – the United States elicited that testimony from Dr. Eason on his direct examination.  [R. 376: Trial Tr. Day 10 (Dr. Martin Eason) at PageID# 3404 – 05 (Dr. Eason confirming he was provided a set of "randomly selected Kentucky resident patients at TPI" and "a separate set of 12 hand-selected patient files from TPI").]  Caudill could not possibly be

defective for failing to call a witness to introduce a fact that was already uncontested in the trial record.

The Defendant also claims that Det. Reeder had previously testified – and presumably would testify again at trial, if called – "that none of the TPI employees nor any business partners knew of anything 'improper' by Mr. Mithavayani." [R. 706: Mem. of Law at PageID# 12906 – 07.] Once again, the Defendant has misrepresented the record. The detention-hearing testimony he cites is merely Det. Reeder's response to a question of whether Dr. Manning – a physician the Defendant and Tyndale recruited to work for them in a new clinic in North Carolina after TPI was shut down and who had never stepped foot inside TPI – had told Det. Reeder whether the Defendant had asked him to do anything improper. [R. 134: Tr. of Mithavayani Det. Hr'g at PageID# 752.] Det. Reeder did not testify then, nor would he have testified at trial, to what the Defendant wishes he would have said. Moreover, this testimony would have been inadmissible hearsay. With little-to-nothing to gain from these two law enforcement witnesses, Caudill's decision not to call them was reasonable, particularly given that "calling such plainly adverse witnesses is fraught with risk." Caudill Aff. ¶ 6.

Next, the Defendant alleges that Caudill was ineffective as counsel because he did not call Dr. John Blakely as a defense witness. Once again, this was a sound trial decision by Caudill. As he explains in his affidavit:

> Although there were some potential helpful points he may have offered, his prior statement to law enforcement contained damaging assertions as well, including: his concern that Gowder was co-prescribing opioids and benzodiazepine-class drugs, which was known to be dangerous and contrary to medical standards; that Gowder performed practically no

12

> examinations on patients; he was told by a TPI office manager that patients were paying a lot of money and he needed to prescribe more medication; that he was called an "asshole" for trying to reduce dosages; that TPI practices regarding who could be in the waiting room and that patients could not talk to each other were suspicious; and that Tyndale was the "enforcer" at TPI and projected an image that Tyndale was dangerous—so much so that Blakely wrote a letter documenting incidents that had occurred at TPI and left copies of the letter around his residence "in case something happened to him." I made a tactical decision not to call Blakely as a witness.

Caudill Aff. ¶ 7; *see also* Ex. B – Report of Interview of Dr. John Paul Blakely, February 22, 2017. Given the obvious downside risks of what the government would elicit on cross-examination, Caudill's decision not to call Blakely was plainly in the bounds of reasonableness.

In sum, Caudill made informed decisions with respect to cross-examination topics and whether to call particular witnesses. The Defendant's arguments are precisely the kind of hindsight-based analysis that *Strickland* warns against. But even with hindsight view, Caudill's decisions were all more than reasonable. And, as noted above, the Defendant cannot identify how any of these purported errors would have produced evidence that could overcome the "voluminous proof" that the Court viewed as "strongly supporting the Defendants' convictions." R. 450: Op. and Order at 7057, 7064.

> B. *Failure to Investigate the Roles and Relationships of Tyndale, Rose, Crawley, and Hadley in the Criminal Conspiracy*

The Defendant's next claim of ineffectiveness is that Caudill failed to investigate "the relevant criminal conspiracy, relationships and the plea/immunity/informant roles of

13

Tyndale, Rose, Crawley, and Hadley.[3]" He offers no evidence that can support this claim [*see* R. 693-1: Mithavayani Aff. at PageID# 12846 – 49 (no assertions regarding Caudill's failure to investigate)], and his memorandum of law shows that this is merely a rehash of his dissatisfaction with the strategic choice Caudill made with Crawley's cross-examination [R. 706: Mem. of Law at PageID# 12911 – 13]. To clarify, "Rose" is a reference to Zach Rose, who Caudill knew had been "operating pill mills in Jacksonville with the help of Crawley and Tyndale." Caudill Aff. ¶ 8. Rose was not a trial witness, but Crawley and other witnesses testified about her and Tyndale's involvement with Rose's pill mills. [*See, e.g.*, R. 435: Trial Tr. Day 4 (Jenna Crawley) at PageID# 4763 (testimony regarding Crawley, Rose, and Tyndale meeting about pain clinic in Jacksonville); *id.* at PageID# 4868 - 69 (testimony of Yevgeny Drubetskoy about working at Rose's clinic in Jacksonville and Tyndale was "the guy who used to run the MRI machines . . . parked in the back of the clinic parking lot").]

As evidenced by his cross-examination of Crawley and Drubetskoy and confirmed by his affidavit, Caudill understood how Rose, Crawley, and the Jacksonville pill mills fit into the government's case, and he deployed a well-reasoned strategy in response: Make it clear to the jury that the Defendant had nothing to do with the Jacksonville pill mills. Caudill Aff. ¶ 8; R. 435: Trial Tr. Day 4 (Yevgeny Drubetskoy) at PageID# 4886 (admission on cross-examination that the Defendant "[d]idn't have anything to do with

---

[3] The Defendant's memorandum of law does not refer to Hadley under this argument, and it thus appears that Hadley's inclusion in this portion of his Ground Three claim was in error. Attorney Edward Hadley had no known association with Zach Rose or the Jacksonville pill mill operations.

14

Jacksonville Pain . . . [and] Duval Wellness"); *id.* at PageID# 4808 (Crawley cross-examination testimony that she never encountered the Defendant in Jacksonville).] In essence, Caudill achieved with these witnesses the entire point that the Defendant claims would have been conveyed but for Caudill's failure to investigate – *i.e.*, that the Defendant stood separate and apart from the other individuals involved in multiple illicit pain clinics. [R. 706: Mem. of Law at PageID# 12911 – 12 (graphic showing the Defendant and his involvement with TPI as an "outlier" to the conspiracy).] None of this evidences a failure to investigate relevant aspects of the case. The fact that this defense did not ultimately convince the jury does not render it outside the bounds of an objective standard of reasonableness. *See Strickland*, 466 U.S. 687-88.

### C. Severance Motion and Judgment of Forfeiture

The Defendant next asks the Court to set aside his conviction based on alleged ineffective assistance from counsel's failure to timely file a motion to sever the case from his co-defendants and to timely file objections to the forfeiture order. Both arguments clearly fail under *Strickland*'s prejudice requirement.

The motion to sever was filed untimely. [R. 225: Op. and Order Denying Mithavayani and Tyndale Mot. to Sever at PageID# 1827.] However, the Defendant has once again misrepresented the record by claiming that the motion was "denied because [it was] late verses [sic] on the merits of the pleadings." [R. 706: Mem. of Law at PageID# 12914.] The Court's order was explicit that the request for severance was "meritless," going so far as to state that "the Court's severance rejection, on Rule 12 grounds, does

15

not prejudice Defendants because their requests also fail under Rule 14." [R. 225: Op. and Order Denying Mithavayani and Tyndale Mot. to Sever at PageID# 1829.] Following that statement is the Court's seven-page analysis for why the severance motion fails on the merits. Thus, this Court has already ruled that the Defendant suffered no prejudice from the untimely nature of the motion to sever. He introduces no new evidence to disturb that ruling.

The Defendant likewise cannot establish prejudice to warrant relief on his § 2255 motion based on counsel's late filing of a response opposing the government's motion for forfeiture. The lack of prejudice works at two levels. First, the Defendant has not, and cannot, allege that he would have been subject to a lesser forfeiture amount but for the untimely filing of the response. The Court, applying *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), imposed a much lower forfeiture figure - $1,934,087.96 – than the $8,161,250.00 the United States sought. He offers no argument for why the figure would have been lower if counsel's response was timely. Second, none of this impacts his conviction. The only substantive relief the Defendant seeks in his § 2255 motion is vacating the judgment of conviction. [R. 706: Mem. of Law at PageID# 12918.] Nothing about the forfeiture order can be a basis to vacate the Defendant's conviction.

### D. Failure to Inform Defendant of Right to Plead Guilty in Lieu of Trial

Finally, the Defendant argues that "at no time during his representation of Mr. Mithavayani did counsel right to plead guilty in lieu of proceeding to trail [sic]." [*Id.* at PageID# 12915.] Notably, the Defendant did not include this allegation or any

16

supporting facts in his affidavit. [R. 693-1: Mithavayani Aff. at PageID#12846 – 49.] Nor does he allege that he would have pled guilty if he had known that was an option. *Id.* In contrast, Caudill's sworn declaration states that Caudill "discussed a potential plea with Mithavayani, but he adamantly refused to consider pleading guilty," and Caudill likewise advised the Defendant "about the potential for providing the government with substantial assistance and how that could reduce his sentence." Caudill Aff. ¶ 9. Against this uncontroverted sworn statement, the Defendant offers no evidence, and thus the Court should reject the claim.

### III. The Defendant Is Not Entitled to an Evidentiary Hearing

"[W]hen a defendant presents *an affidavit* containing a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the defendant is entitled to an evidentiary hearing." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (internal quotation marks omitted) (emphasis added). But "no hearing is required where the record conclusively shows that the petitioner is entitled to no relief and a full blown evidentiary hearing is not required in every case." *Id.* (internal quotation marks and citation omitted). "Conclusions rather than statements of fact" do not trigger a right to a hearing; nor do assertions that are "contradicted by the record" or "inherently incredible." *Id.* Here, the Defendant offers only a skeletal affidavit addressing topics that are not dispositive or even relevant to Ground Three, the only claim properly before the Court on this § 2255 motion. In other words, all the facts

17

asserted in the Defendant's affidavit could be taken as true, and he would still not have established either defective performance or prejudice as required to prove ineffective assistance of counsel. The exhibits attached to his memorandum of law likewise create no factual dispute. [*See* R. 706-1: Exhibits to Mem. of Law at PageID 12921 – 38.] Because the existing record conclusively establishes that his prosecutorial misconduct claims are procedurally defaulted and that even his version of the facts do not meet *Strickland*'s dual prongs, the Court should deny the motion without a hearing.

>    Respectfully submitted,
>
>    CARLTON S. SHIER, IV
>    UNITED STATES ATTORNEY
>
>    By:  /s Gregory Rosenberg
>    Gregory Rosenberg
>    Assistant United States Attorney
>    601 Meyers Baker Rd. Suite 200
>    London, KY 40741
>    (859) 685-4822
>    Gregory.Rosenberg2@usdoj.gov

## CERTIFICATE OF SERVICE

On August 18, 2022, I electronically filed this motion through the ECF system, and will send a copy by mail to Anwar Mithavayani, Reg. No. 17101-104, FCI Miami, P.O. Box 779800, Miami, FL 33177.

s/ Gregory Rosenberg
Assistant United States Attorney
