UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,            )
                                     )
    Plaintiff,                       )
                                     )
v.                                   )        No. 6:17-CR-25-REW-EBA-3
                                     )
                                     )        OPINION & ORDER
ANWAR MITHAVAYANI,                   )
                                     )
    Defendant.                       )

*** *** *** ***

Defendant Anwar Mithavayani, *pro se*, moves for sentence reduction under 18 U.S.C. § 3582(c). *See* DE 801. He argues that the Court should modify his sentence on account of various medical conditions that, generally stated, substantially diminish his ability to provide self-care and require long-term or specialized care. *See id.* at 4–5. Mithavayani also asserts that he is subject to an unusually long sentence, and an intervening change in the law has produced a gross disparity between the term of imprisonment imposed at the time of his sentencing and the term of imprisonment that would be imposed today. *See id.* at 5–6. The Government filed a response in opposition to Mithavayani's motion, *see* DE 803, and Mithavayani filed a reply, *see* DE 807. Because Mithavayani has failed to establish circumstances that warrant a sentence reduction, the Court DENIES DE 801.

## I.   BACKGROUND

At the conclusion of trial, Mithavayani was found guilty of conspiracy to distribute Schedule II controlled substances (21 U.S.C. § 846), conspiracy to commit money laundering (18 U.S.C. § 1956(h)), and multiple counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957). *See* DE 405. Ultimately, the Court imposed

a 300-month term of imprisonment with three years of supervised release. *See* DE 537. On appeal, the Sixth Circuit affirmed in whole. *See* DE 665; *United States v. Gowder*, 841 F. App'x 770 (6th Cir. 2020). The case involved a long-term, highly profitable, highly damaging pill mill operation of which Mithavayani was a chief architect and beneficiary. He received a long and warranted term of imprisonment. He unsuccessfully appealed, unsuccessfully sought relief as a zero-point offender, and unsuccessfully pressed a § 2255 motion. Mithavayani now turns to § 3582.

In late 2025, Mithavayani filed the instant motion for compassionate release. *See* DE 801. Presently, he has served approximately 30% of his sentence. *See* DE 803-1 at 3. In his motion, Mithavayani essentially raises four arguments: (1) his prior Helicobacter pylori ("H. pylori") infection and (potential) prostate cancer amount to serious conditions that substantially diminish his ability to provide self-care and from which he is not expected to recover, *see* DE 801-1 at 10–14; (2) those same conditions require long-term and/or specialized care that has not been provided, leaving him at risk of serious deterioration in his health or death, *see id.* at 14–19; (3) a recent amendment to the U.S. Sentencing Guidelines has produced a gross disparity between the sentence Mithavayani is currently serving and the sentence that the Court would likely impose today, *see id.* at 20–21; and (4) he has presented other circumstances properly classified as extraordinary and compelling, *see generally id.* Among other things, Mithavayani attached a positive test for H. pylori from 2022, *see* DE 801-2 at 1, and an allergen report, *see id.* at 3–6, to the motion. The Court discerns no objective evidence indicating that Mithavayani currently suffers from prostate cancer. *See generally* DE 801; DE 807.

The Government responded in opposition to Mithavayani's motion, first noting that he has failed to establish extraordinary and compelling reasons under any of his four theories. *See* DE 803 at 3–8. The Government further argues that the § 3553(a) factors do not support Mithavayani's

2

early release.  *See id.* at 8–9.  Mithavayani filed a reply, largely reasserting his prior claims with respect to the H. pylori infection in particular.  *See* DE 807.  The briefing is now complete, and the matter is ripe for the Court's decision.

## II.    LEGAL STANDARD

Courts may not generally "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  Congress has, however, established certain narrow exceptions to this rule. One such exception permits courts to:

> [R]educe the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if . . . extraordinary and compelling reasons warrant such a reduction . . . and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).[1]  By separate statute, Congress tasked the Sentencing Commission with identifying "what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(C) (directing the promulgation of general policy statements regarding the use of the § 3582(c) sentence-modification provisions).

The Sentencing Commission has since defined extraordinary and compelling reasons, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b) (U.S. SENT'G COMM'N 2025), and explained that courts may only grant a sentence reduction if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community," and the reduction is otherwise "consistent with this policy statement," *id.* § 1B1.13(a); *see also United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020).

---

[1] This is a provision that Congress broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018.  *See* Pub. L. No. 115–391, 132 Stat. 5194.

3

Until 2018, only the Federal Bureau of Prisons ("BOP") could move for compassionate release. *See Jones*, 980 F.3d at 1104–05. The First Step Act changed that by allowing defendants to circumvent the typically languid BOP and petition courts directly for compassionate release. Pub. L. No. 115–391, 132 Stat. 5194; *see also Jones*, 980 F.3d at 1104–05. However, a defendant may only do so (1) after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion," or (2) upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).[2]

Since the First Step Act's enactment, the Sixth Circuit has established a "three-step inquiry" governing prisoner-initiated motions,[3] directing courts to consider (1) whether "extraordinary and compelling reasons" support a reduction, (2) whether a reduction would be "consistent with 'applicable' Sentencing Commission policy statements," and (3) whether the § 3553(a) factors favor release. *Jones*, 980 F.3d at 1101 (citing *Ruffin*, 978 F.3d at 1003–06). In any § 3582 action, the defendant bears the burden of demonstrating his eligibility for a sentence reduction. *See Ruffin*, 978 F.3d at 1008–09; *see also United States v. Roberts*, No. 5:21-CR-23, 2026 WL 1603003, at *1 n.2 (W.D. Ky. June 4, 2026) ("District courts in other circuits addressing similar questions have concluded that a defendant must establish [extraordinary and compelling] circumstances by a preponderance of the evidence, but no court of appeals appears to have directly answered that question.").

---

[2] While § 1B1.13 previously only applied to BOP-initiated requests for compassionate release, *see Jones*, 980 F.3d at 1109–10, the Sentencing Commission amended its policy statement to similarly govern motions filed by defendants, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a).

[3] The Court may deny a compassionate release motion "based on the defendant's failure to meet any one of [the] criteria." *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020)). Granting release, though, requires a positive finding at each step. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) (citing *Elias*, 984 F.3d at 519) ("[W]here the district court grants a motion for compassionate release, it must of course address all three steps.").

4

Under the current policy statement, "extraordinary and compelling reasons" may include certain medical circumstances, such as "the defendant . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(1)(B), or "the defendant suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C). It also textually includes instances where:

> [A] defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, [and] a change in the law . . . presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* § 1B1.13(b)(6). However, the U.S. Supreme Court has made clear that a "sentencing disparity created by Congress's nonretroactive change to" the law cannot amount to an extraordinary and compelling circumstance; any assertion to the contrary would exceed the Sentencing Commission's statutory authority. *Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026); *see also United States v. Bricker*, 135 F.4th 427, 448 (6th Cir. 2025) ("The Commission's decision in § 1B1.13(b)(6) to give retroactive effect to some nonretroactive changes . . . but not others . . . is not only an unreasonable interpretation or construction of § 3582(c)(1)(A)(i), it amounts to a heavy-handed and unseemly power grab . . . .").

Additionally, there is a "catchall" category by which a defendant may establish extraordinary and compelling reasons if his circumstances "are similar in gravity to," but still distinct from, the specific categories set out in § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). The catchall category does not include the change in the law provision detailed in § 1B1.13(b)(6).

### III.  ANALYSIS

Mithavayani's motion fails on two bases.  First, he has not established extraordinary and compelling reasons that warrant a sentence reduction.  Second, the § 3553(a) factors strongly counsel against release or reduction.[4]

#### A.  Defendant Has Not Established Extraordinary and Compelling Reasons

None of Mithavayani's four arguments suffices to establish extraordinary and compelling reasons.  For that reason alone, the Court denies his § 3582(c) motion.

#### 1.  Diminished Ability to Provide Self-Care (§ 1B1.13(b)(1)(B))

Mithavayani first argues that his H. pylori infection and prostate cancer are "serious physical or medical condition[s]" that substantially diminish his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  *Id.* § 1B1.13(b)(1)(B).  However, a closer inspection reveals that Mithavayani is not currently suffering from prostate cancer.  *See generally* DE 801-1; DE 807.  Instead, he alleges that he *had* prostate cancer and is concerned about a future diagnosis.[5]  *See* DE 801-1 at 14–18.  Neither § 1B1.13(b)(1)(B) nor § 1B1.13(b)(1)(C) applies to a *potential* physical or medical condition.

---

[4] Mithavayani also moves for appointment of counsel.  *See* DE 801 at 2.  Initially, the Court notes that the constitutional right to counsel does not extend to efforts to secure post-conviction relief, including motions for compassionate release.  *See Pennsylvania v. Finley*, 107 S. Ct. 1990, 1993 (1987).  Instead, "[t]he decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court."  *United States v. Inman*, 583 F. Supp. 3d 1117, 1119 (M.D. Tenn. 2022) (citing *United States v. Stephens*, No. 06-CR-20365, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020)).  In considering whether appointment of counsel is proper, the Court must examine "the type of case and the abilities of the plaintiff to represent himself."  *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)).  Specifically, the Court must weigh the merits of the case and make "a determination of the 'complexity of the factual and legal issues involved.'"  *Id.* (quoting *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986)).  Here, the motion is straightforward, and its merits are weak.  The Court sees no reason to appoint counsel, and as a result, denies Mithavayani's request in its discretion.  Mithavayani has been *pro se* in many prior filings before the Court, and he needs no lawyer here.

[5] Notably, the Government has also provided extensive evidence indicating that the BOP is closely monitoring Mithavayani's prostate-specific antigen levels.  *See* DE 803 at 5–7.  It is unclear what further treatment Mithavayani desires without a formal prostate cancer diagnosis.

6

Indeed, the United States shows that Mithavayani had an outside consultation with a urologist, who only diagnosed "BPH," the first letter of which stands for "benign." *See* DE 803 at 5. As a result, the Court only addresses Mithavayani's H. pylori infection.

But Mithavayani's H. pylori infection does not satisfy § 1B1.13(b)(1)(B)'s requirements. Upon consideration of a similar claim, a jurist in the Eastern District of Michigan noted that "[c]ourts generally exercise their discretion to find that a defendant's . . . non-severe, non-lethal illness that can be effectively treated in prison—such as H. pylori—is neither extraordinary nor compelling." *United States v. Sykes*, No. 03-80028, 2021 WL 5629977, at *3 (E.D. Mich. Dec. 1, 2021); *see also United States v. Mendoza*, No. 13-0238, 2021 WL 2856673, at *2 (W.D. Wa. July 8, 2021); *United States v. Hoti*, No. 15-CR-651, 2021 WL 2581670, at *3 (S.D.N.Y. June 23, 2021). The Court concurs with that assessment. And despite his arguments to the contrary, it is difficult to believe that Mithavayani is not expected to recover from H. pylori, an easily treatable and exceedingly common infection.[6] *See Sykes*, 2021 WL 5629977, at *3; *H. Pylori Infection*, CLEVELAND CLINIC (May 13, 2025), https://perma.cc/F3YS-AJMB ("*H. pylori* . . . is . . . the most common chronic bacterial infection in humans. It affects more than half of the world's population. . . . If you don't have [*H. pylori*] symptoms, you don't need treatment. . . . If you do have symptoms . . . , *H. pylori* treatment includes a combination of antibiotics and an acid-reducing proton pump inhibitor . . . ."). Accordingly, Mithavayani's non-severe, non-lethal H. pylori infection fails to satisfy § 1B1.13(b)(1)(B)'s explicit terms.

A note or two more: Mithavayani's diagnosis (test, at least) is from 2022, and nothing confirms his current status. Further, when he saw the outside urologist, that yielded a referral for a GI consult, and it appears Mithavayani has had some form of intervention regarding GI

---

[6] And indeed, Mithavayani's condition may already have been treated. He only manages to provide a positive test from 2022 as evidence. *See* DE 801-2 at 1.

7

complaints.  This simply cuts against his description of current treatment and status.  Lastly, in his release plan documents, Mithavayani confirms no need for assistance with self-care.  *See* DE 801 at 11.  He does not carry his assigned burden.

### 2.  Long-Term or Specialized Medical Care (§ 1B1.13(b)(1)(C))

Mithavayani's § 1B1.13(b)(1)(C) argument similarly fails.  A mere fear of prostate cancer is not a "medical condition," H. pylori does not require any "long-term or specialized medical care," and nothing suggests that Mithavayani "is not being provided" some form of required care.  U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(1)(C).  In fact, the Government's evidence indicates that Mithavayani is generally receiving adequate treatment and monitoring while in BOP custody.  *See* DE 803 at 4–7.  This includes repeated outside consults and testing.  Mithavayani has failed to (1) provide a recent test result establishing the existence of a persistent H. pylori infection, (2) demonstrate that he requires some type of long-term or specialized care for that infection, or (3) establish that he is being denied care.  *See United States v. Littles*, No. 15-20317, 2024 WL 5337831, at *5 (E.D. Mich. Dec. 17, 2024) (denying a motion for sentence reduction because "information about [the allegedly required care was] not apparent from a review of [the defendant's] medical records, and it [was] not apparent that his lack of access to that [care] put[] him at serious risk of a deterioration in health or death"); *see also United States v. Allard*, No. 5:00-102, 2024 WL 3432189, at *2 (E.D. Ky. July 15, 2024).  On account of those failures, the Court concludes that Mithavayani has not made an adequate showing under § 1B1.13(b)(1)(C).[7]

---

[7] Other than his own remarks, Mithavayani does not tie his dietary claims to any medical authority or expertise.  Though he has many complaints sounding in constitutional tort, this matter addresses whether something extraordinary justifies a reduction in a duly imposed and well-tested prison sentence.  The Court rejects the dietary arguments as not shown, by Mithavayani, to fit within the § 1B1.13 rubric, on this record.

### 3.    Change in the Law (§ 1B1.13(b)(6))

Mithavayani argues that a recent amendment to the Guidelines' drug quantity table amounts to a change in the law that created "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  U.S. SENT'G GUIDELINES MANUAL  § 1B1.13(b)(6).    But as previously noted, the U.S. Supreme Court has held § 1B1.13(b)(6) to be invalid, *see Rutherford*, 146 S. Ct. at 1326, confirming the Sixth Circuit's position that the provision represents an improper attempt "to empower courts to give retroactive effect to nonretroactive sentencing amendments and to ignore or overcome statutory mandatory minimum sentences violates the separation of powers," *Bricker*, 135 F.4th at 448–50.  As a result, Mithavayani's argument fails on that basis alone.

But even if the Court were to overlook the *Rutherford* and *Bricker* decisions—which it is not permitted to do—it does not appear that any recent amendment to the Guidelines would cause the Court to impose a  different sentence; movant certainly highlights none.  Mithavayani (1) has not served at least 10 years of his term of imprisonment, *see* DE 803-1 at 3, and (2) is attempting to rely on a change in the Guidelines that has not been made retroactive to establish extraordinary and compelling reasons, *see* DE 801-1 at 20–21, both of which are sufficient grounds to defeat his argument.  *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(6) ("If a defendant . . . has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered . . . .").  Thus, even if the Court were permitted to grant relief under § 1B1.13(b)(6), Mithavayani has not made a sufficient showing.

9

#### 4.   Catchall Category (§ 1B1.13(b)(5))

Mithavayani is likewise unable to rely on the catchall category enumerated in § 1B1.13(b)(5).  Because Mithavayani entirely failed to carry his burden under § 1B1.13(b)(1)— a category directly applicable to the present matter—he cannot now rely on § 1B1.13(b)(5) to argue that his circumstances, which merely present the same underlying issues, are "similar in gravity" to one of the categories set out in § 1B1.13(b).  That is, Mithavayani's failure to make anything approaching an adequate showing on a directly applicable category defeats the notion that his gathered circumstances are "similar in gravity" to any single category.  It is certainly telling that Mithavayani almost entirely ignores the § 1B1.13(b)(5) theory in both his motion and reply.

And while Mithavayani indirectly suggests that some above-referenced change in the Guidelines can establish extraordinary and compelling reasons under § 1B1.13(b)(5), *see* DE 801-1 at 20–21, he neglects to reference the fact that § 1B1.13(b)(5) only explicitly applies where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [§ 1B1.13(b)(1)–(4)], are similar in gravity to those described in [§ 1B1.13(b)(1)–(4)]."  Mithavayani's change in the law argument, which the Court has already evaluated and dispatched under § 1B1.13(b)(6), should not factor into this analysis.

* * *

In sum, Mithavayani has failed to establish extraordinary and compelling reasons that render him eligible for release or a reduction in his sentence within the requirements of § 1B1.13.  But even if Mithavayani *had* presented extraordinary and compelling reasons to justify release, the Court would still deny his motion upon consideration of the § 3553(a) factors.

### B.  The § 3553(a) Factors Do Not Favor Release

At sentencing, the Court imposed a 300-month term of imprisonment, *see* DE 537, of which Mithavayani has only served a modest fraction, *see* DE 803-1 at 3.  To be abundantly clear, Mithavayani earned every month of that sentence.  In 2011, Peter Tyndale and Mithavayani founded the Tennessee Pain Institute ("TPI"), a cash-pay clinic and pill mill that distributed copious amounts of synthetic opioids—like oxycodone and oxymorphone—without medical justification.  *See* DE 532 ¶¶ 6–12, at 5–7.  In total, the pair spearheaded the distribution of more than 1,600,000 oxycodone pills over TPI's life.  *See* Statement of Reasons ("SOR") at 5.  More generally, the pills they prescribed were over 426,000 kilograms in converted drug weight.  *See* DE 532 ¶ 24, at 9–10.  TPI's operations were only halted following the completion of a U.S. Drug Enforcement Administration raid.  *See id.* ¶¶ 18–19, at 8.  Afterwards, Tyndale and Mithavayani continued their criminal misconduct, launching yet another pill mill in North Carolina.  *See* SOR at 5.  Mithavayani's range included a leadership adjustment and a kicker for money laundering.  The crime typified the worst of the pill mill era.

Mithavayani's final offense level was a staggering 43 (there capped, actually a calculated 50), the maximum level contemplated by the Guidelines.  His 300-month sentence actually represented a significant downward variance from the Guidelines range of 1,440 months—a variance only justified by his "mostly lawful life, and admirable societal contributions."  *See* SOR at 5. While the imposed sentence was indeed grave, it matches the grave crimes. By monetizing addiction under the cover of medical care, Mithavayani authored a massive supply of high-risk controlled substances to the Eastern District.  His conduct was designed to frustrate oversight, minimize accountability—and above all else—generate profits.  Through his illicit distribution of oxycodone, oxymorphone, and benzodiazepines, Mithavayani devastated the Kentucky

11

community, an intentional target for the Chattanooga operation. The Court will not permit Mithavayani to evade just punishment for his heinous misconduct. The sentence carefully accounted for all catalyzing purposes, and those purposes continue to demand attention today. The passage of time does not fade the indelible need for deterrence, a rightly punitive cost, and a reflection of the crime's gravity. A sentence reduction would enervate this calculus, a conclusion wholly unjustified on this plain record.

### IV.    CONCLUSION

For the above-stated reasons, the Court, in its discretion, DENIES DE 801.

This the 6th day of July, 2026.

Signed By:

*Robert E. Wier*

**United States District Judge**